# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| CLINTON HUNTER, JR., <br><br> Plaintiff, <br><br> v. <br><br> P.O. LONG # 338, CAPTAIN RUDY GRASHA, individually, and the CITY OF HAMMOND, a municipal corporation, <br><br> Defendants. | CAUSE NO.: 2:15-CV-475-TLS |

## OPINION AND ORDER

This matter is before the Court on Officer Long and Captain Grasha's Motion for Summary Judgment [ECF Nos. 32] and the City of Hammond's Motion for Summary Judgment [ECF No. 34], both filed on November 27, 2017. For the reasons stated below, the Court DENIES the Officers' Motion for Summary Judgment and GRANTS the City of Hammond's Motion for Summary Judgment.

## PROCEDURAL HISTORY

On July 26, 2016, the Plaintiff filed an Amended Complaint [ECF No. 15] brought pursuant to 42 U.S.C. § 1983 against (1) Officer Long, (2) Captain Rudy Grasha, and (3) the City of Hammond, Indiana. In Count I, the Plaintiff alleges that Officer Long and Captain Grasha, while acting within their scope of employment as Hammond police officers, used excessive force when effectuating his arrest in violation of the Fourth Amendment. *See* Pl.'s Am. Comp. 1–3. In Count II, the Plaintiff alleges that the City of Hammond is liable under a state law theory of indemnification for any judgment obtained against the Officers. *See id.* at 3.

On November 27, 2017, the Defendants filed the instant Motions for Summary Judgment [ECF Nos. 32, 34]. The Plaintiff filed a combined response [ECF No. 41] to both motions on January 16, 2018. The Defendants filed a reply [ECF No. 45] in support of summary judgment on January 26, 2018.

Officer Long and Captain Grasha argue that they are entitled to qualified immunity and there is no basis for a punitive damages award, and the City of Hammond argues that the claim for indemnification is unripe. *See* Defs.' Br. Supp. Summ. J. Mot. 4–12, ECF No. 33; Def.'s Br. Supp. Summ. J. Mot. 7, ECF No. 35; *see also* Defs.' Reply Br. Supp. Defs.' Summ. J. Mot. 10, ECF No. 45. The Plaintiff maintains that there are genuine issues of material fact which require a trial, especially regarding whether the Officers used excessive force when effectuating his arrest. *See* Pl.'s Mem. Opp'n Defs.' Summ J. Mots. 1–2, ECF No. 41. In response, the Defendants argue that there is no dispute of material fact because the Plaintiff's version of events are blatantly contradicted by video evidence. *See* Defs.' Reply Br. Supp. Defs.' Summ. J. Mot. 2–4, ECF No. 45.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it might affect the outcome of the litigation under the governing law. Conversely, where a fact wouldn't affect the outcome of a suit, whether it is disputed is irrelevant." *Eubanks v. Norfolk S. Ry. Co.*, 875 F. Supp. 2d 893, 898 (N.D. Ind. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))). Irrelevant or unnecessary

factual disputes do not preclude the entry of summary judgment. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

"A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013) (quoting *Anderson*, 477 U.S. at 248). Within this context, the Court must construe all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017). However, "[w]hen the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape." *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (citing *Scott v. Harris*, 550 U.S. 372, 379–80 (2007)).

**STATEMENT OF MATERIAL FACTS**

On the night of April 18, 2015, the Plaintiff and his brother went to the Horseshoe Casino in Hammond, Indiana. Pl.'s Aff. 57:14–61:19, Ex. 1, ECF No. 36. The casino surveillance video shows that on April 19, 2015, at 3:25 AM, casino security officers and Hammond police officers escort the Plaintiff from the casino. *See* Surveillance Video, ECF No. 30. At 3:29 AM, the Plaintiff exits the casino and stands in the vestibule. *Id.* The Plaintiff reenters the casino at 3:30 AM and, while interacting the customers and casino employees, stands near the exit. *Id.* At 3:33 AM, the police once again escort the Plaintiff from the casino. *Id.* The Plaintiff remains in the vestibule, makes a phone call, and speaks with his brother. *Id.* At 3:35 AM, security officers escort the Plaintiff out of the vestibule and onto the curb. *Id.* The Plaintiff walks away from the curb and into the parking lot at 3:37 AM. *Id.* The Plaintiff enters the Casino's parking garage that was designated

for employee use at 3:39 AM by running up a ramp that was designated for vehicular traffic. *Id.* Eventually, the Plaintiff runs down the stairs and exits the parking garage at 3:43 AM. *Id.*

As the Plaintiff exits the garage, Officer Long pulls up in his squad car. *Id.* James Spikes, a security officer, also exits the parking garage. *Id.* Officer Long and Spikes confront the Plaintiff at 3:43:42 AM. *Id.* The Plaintiff puts his hands up and backs towards the hood of the squad car. *Id.* Officer Long then positions the Plaintiff against the hood of the car at 3:43:48 AM. *Id.* At the same time, Captain Grasha runs towards the squad car to assist Officer Long. *Id.* Captain Grasha arrives at the car at 3:43:51 AM. *Id.* Captain Grasha pulls out his taser and presses it against the Plaintiff's back at 3:43:54 AM. *Id*. Captain Grasha applies the taser and delivers two "drive stuns" to the Plaintiff's back which last one second each. Grasha Dep. 38:12–40:24, Ex. H, ECF No. 36. Captain Grasha keeps his taser pressed against the Plaintiff's back. *See* Surveillance Video, ECF No. 30. Captain Grasha withdraws his taser from the Plaintiff's back at 3:44:10 AM. *Id.* At the same time, Officer Long lifts the Plaintiff from the hood of the car in handcuffs. *Id.* The Plaintiff was arrested for disorderly conduct. In his deposition, the Plaintiff testified that (1) he was not resisting arrest, (2) Officer Long slammed him onto the hood of the squad car, and (3) he was tased after being placed into handcuffs. Pl.'s Aff. 133:1–145:5, Ex. 1, ECF No. 40.

## ANALYSIS

Officer Long and Captain Grasha argue that (1) they are entitled to qualified immunity and (2) there is no basis for punitive damages. The City of Hammond argues the claim for indemnity under state law is unripe. The Court addresses these issues in turn.

4

## A. Qualified Immunity

The Court concludes that the Officers are not entitled to qualified immunity at this time. "Qualified immunity shields public officials from liability when they act in a manner that they reasonably believe to be lawful." *Gonzalez*, 578 F.3d at 540. "Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "The plaintiff carries the burden of defeating the qualified immunity defense." *Chasensky v. Walker*, 740 F.3d 1088, 1095 (7th Cir. 2014). "To overcome a defendant's invocation of qualified immunity, a plaintiff must show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017) (internal quotation marks omitted). "If *either* inquiry is answered in the negative, the defendant official is entitled to summary judgment." *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014).

A claim that an officer used excessive force while making an arrest is evaluated under the Fourth Amendment's standard of objective reasonableness. *Scott*, 550 U.S. at 381. "An officer's use of force is unreasonable from a constitutional point of view only if, judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009) (internal quotation marks omitted). In judging the reasonableness of any particular use of force, the Court considers factors such as (1) the severity of the crime, (2) whether the arrestee poses an immediate threat to the safety of the officer or others, and (3) whether the arrestee is actively resisting arrest or attempting to flee and evade arrest. *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861–62 (7th Cir. 2010).

For the purposes of qualified immunity, it was clearly established at the time of the events underlying this case that (1) a police officer cannot continue to use force once a suspect is subdued, (2) a police officer cannot use significant force on a non-resisting or passively resisting suspect, and (3) only minimal force is warranted when a suspect is passively resisting. *Becker v. Elfreich*, 821 F.3d 920, 928–29 (7th Cir. 2016) (citing *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 725, 732, 733 (7th Cir. 2013); *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 529 (7th Cir. 2012)).

In this case, when the facts are viewed in the light most favorable to the nonmoving party, as they must be at this summary judgment stage, Officer Long confronted the Plaintiff as he exited the casino's parking garage and pushed him onto the hood of his squad car. As this was occurring, Captain Grasha ran to assist Officer Long. Captain Grasha twice applied a taser upon the Plaintiff's person. The Plaintiff testified that he was not resisting and was tased while he was in handcuffs, and this version of events is not blatantly contradicted by the video evidence.

When the facts are viewed in the light most favorable to the Plaintiff, a reasonable jury could find that the Officers' actions were unreasonable because (1) the severity of the crime was minimal, (2) the Plaintiff did not pose an immediate threat to others, and (3) the Plaintiff was not actively resisting arrest. *Cyrus*, 624 F.3d at 861–62. Further, when the facts are so viewed, the Officers violated clearly established law by using significant force on a non-resisting or passively resisting suspect. *See Abbott*, 705 F.3d at 732 ("Prior to 2007, it was well-established in this circuit that police officers could not use significant force on nonresisting or passively resisting suspects."); *see also Toredo v. Blackwell*, 383 F. Supp. 3d 826, 836 (S.D. Ind. 2019) ("Under *Cyrus*, *Abbott*, and *Phillips*, Officer Blackwell's Taser use [against a passively resisting suspect] was excessive under clearly established law."). Accordingly, the Officers are not entitled to

6

qualified immunity at this point in the case. It is a determination that may be revisited by the Court at the time of trial.

Trying to avoid this result, the Officers argue that the Plaintiff's version of events are blatantly contracted by the surveillance video. "When the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape." *Williams*, 809 F.3d at 942. In *Williams*, the plaintiff brought an excessive force claim following a physical altercation that occurred during his arrest. *Id.* at 941. The district court, after finding that no reasonable jury could find that the officer used excessive force, granted the defendants' motion for summary judgment. *Id.* On appeal, the plaintiff argued that "he did not forcibly resist arrest but rather 'leaned away and twisted in pain.'" 809 F.3d at 943 n.3. The Seventh Circuit concluded that "the video blatantly contradicts these allegations." *Id.* Based on a dash cam video, the Court found that the plaintiff "was uncooperative and ignored many commands from Officer Brooks. [The plaintiff] forcefully pushed against Officer Brooks, using his arms to push away from the car and backing his body into Officer Brooks, preventing Officer Brooks from conducting a pat down search and conducting a field sobriety test." *Id.* Thus, the Seventh Circuit affirmed the grant of summary judgment because the plaintiff's version of events was blatantly contradicted by the record. *Id.* at 946; *see also Scott*, 550 U.S. at 379–381 (The Supreme Court concluded that the defendant was entitled to summary judgment because the plaintiff's assertion that he was driving safely was blatantly contradicted by the video evidence. The video showed the plaintiff "swerve around more than a dozen other cars, cross the double-yellow line, and force cars traveling in both directions to their respective shoulders to avoid being hit.").

In this case, the Plaintiff's arrest occurred during the middle of the night in a dimly lit area. The camera recording the arrest was located approximately twenty feet away from the squad car. When the Plaintiff was positioned against the hood of the squad car, the camera's view of the Plaintiff was partially obstructed by Officer Long's back. When Captain Grasha used his taser, the camera's view of the Plaintiff was partially obstructed by Officer Long's back and obfuscated by the dark coloring of the squad car. The Plaintiff later testified that he was not resisting arrest and was tased after being placed into handcuffs. Critically, due to the lighting and the position of the involved parties, the camera does not have an unobstructed view of what the Plaintiff was doing with his hands or whether he was handcuffed in the moments before Captain Grasha applied the taser. Thus, unlike cases such as *Williams* and *Scott*, there is not clear video evidence which blatantly contradicts the Plaintiff's version of events. Instead, the video underscores genuine issues of fact as to what precisely occurred.

**B.     Punitive Damages**

The Officers also argue that there is no basis for the Plaintiff's claims of punitive damages. In *Smith v. Wade*, 461 U.S. 30, 56 (1983), the Supreme Court held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." When the facts are viewed in the light most favorable to the nonmoving party, the Plaintiff was tased even though he was handcuffed and not resisting. When the evidence is so viewed, a reasonable jury could find that the Officers acted with callous indifference to the Plaintiff's federally protected rights. *See, e.g.*, *Terrell v. Vill. of Univ. Park*, No. 92 C 3320, 1994 WL 30960, at *1–3 (N.D. Ill. Feb 1, 1994) (affirming the jury's award of punitive

damages when the plaintiff was slapped in the back of the head and slammed against a police car after being placed into handcuffs). Accordingly, there is a genuine dispute of material fact, at this summary judgment stage, on the issue of whether punitive damages are appropriate.

**C.    Indemnification**

The City argues that, because the Officers' liability has not been established under § 1983, the Plaintiff's indemnification claim is not ripe and should be dismissed. In *Sowell v. Dominguez*, No. 2:09 CV 47, 2011 WL 294758, at *2 (N.D. Ind. Jan. 26, 2011), the plaintiff alleged that various government employees were liable under 42 U.S.C. § 1983 and that the Lake County Jail was liable under a theory of indemnification pursuant to Ind. Code § 34-13-4-1. In dismissing the indemnification claim without prejudice, the Honorable James T. Moody reasoned as follows:

> No one has been found liable yet in this case and no judgment has been entered. This court only has subject matter over a case in which the controversy is ripe. A claim is not ripe if it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all" *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotations omitted). Accordingly, any claim for indemnity resulting from this suit is not ripe until the underlying liability has been established. *See Doe v. City of Chi.*, 360 F.3d 667, 672 (7th Cir. 2004) ("We have warned repeatedly against trying to resolve indemnity before liability."); *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) ("We regularly say that decisions about indemnity should be postponed until the underlying liability has been established."). At this point it is not clear that any of the Lake County Jail defendants will be held liable under Section 1983, that they acted within the scope of employment, or that they are all being defended by the state. Therefore, [the plaintiff's] indemnification claims will be dismissed without prejudice for lack of subject matter jurisdiction.

*Sowell*, 2011 WL 294758, at *14, *cited with approval in Smith v. Lake County*, No. 2:15 CV 123, 2017 WL 568590, at *9 (N.D. Ind. Feb. 13, 2017), and *Hobson v. Dominguez*, No. 2:10 CV 429, 2012 WL 4361537, at *16 (N.D. Ind. Sept. 24, 2012).

9

The Plaintiff's only claim against the City of Hammond is a state law claim for indemnification in the event that judgment is entered against the Officers on the Plaintiff's § 1983 claims. *See* Pl.'s Am. Comp. 3; Pl.'s Mem. Opp'n Defs.' Summ J. Mots. 6. As such, the Plaintiff's claim against the City of Hammond is not ripe. *See Sowell*, 2011 WL 294758, at *14. Accordingly, the City of Hammond's Motion for Summary Judgment is granted, to the extent the claim for indemnification is dismissed without prejudice.

**D.     The Moot Arguments**

Both motions for summary judgment argue that any state law claims must be denied because the Plaintiff did not comply with the Indiana Tort Claims Act. The Plaintiff notes that he "has not pled any Indiana state law claims in his First Amended Complaint. Every single cause of action is Federal, with the exception of the Plaintiff's Indemnification count." Pl.'s Mem. Opp'n Defs.' Summ J. Mots. 6. The City moves for summary judgment on any *Monell* claim brought by the Plaintiff. The Plaintiff also notes that he "has not pled a [*Monell*] claim" against the City of Hammond. *Id.* Accordingly, the Defendants' arguments regarding Indiana tort law claims and *Monell* liability are moot.

## CONCLUSION

Based on the foregoing, the Court DENIES the Officers' Motion for Summary Judgment [ECF Nos. 32] and GRANTS the City of Hammond's Motion for Summary Judgment [ECF No. 34] for dismissal of the indemnification claim WITHOUT PREJUDICE. Count II of the Plaintiff's Amended Complaint [ECF No. 15] is DISMISSED WITHOUT PREJUDICE.

SO ORDERED on September 26, 2019.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT